Thank you, Your Honor. May it please the Court, my name is Greg Wilkinson. I represent the appellant State Water Contractors. I'd like to begin by thanking Who else do you represent in this case? Anybody? Who else do you represent in this case? Anybody? No. Just the State Water Contractors. I have trouble seeing how they get past the fourth prong of that test for intervention. Well, that's the issue, Your Honor, is the fourth prong. That was the only determination made by the trial court, Judge Wilkin. It seems like you've got other parties in there with the same interest. Well, in fact, they don't. The party that was determined by the trial judge, Judge Wilkin, to represent the interests of the State Contractors is the Farm Bureau Federation. And as I said, Judge Wilkin determined that the other three prongs of the rules for intervention, as of right, had been satisfied.  Now, what you find is that Judge Wilkin determined that the Farm Bureau was an adequate representative of the State Water Contractors based upon her belief that the Farm Bureau Federation has legal interests in the State Water Project. Same ultimate objective. Now, she said legal interests was the determination that she had made. And in fact, she concluded that they have a legal interest in the State Water Project and the State Water Project's water supply. And in fact, that is an error. The Farm Bureau Federation holds no contract for State water. Let's say you're right. It doesn't have the same legal interest. But why wouldn't it have the same practical interest in the litigation and an interest in raising the same arguments? I think that's fair. Defend the biological opinion. Well, I suppose they would be defending the biological opinion. But whether they would be raising the same arguments that the State Water Contractors and others might raise is really the question. And that we don't know at this point. The Farm Bureau Federation represents the Farm Bureau. I think the way you do this is pretty much assume that they'll have good lawyers and that your parties will have good lawyers and look at whether good lawyers representing their clients' interests would raise different arguments because of where they sit. And that's what I'm having trouble with. Sure. And I understand that. I think they do have good lawyers. I think we have good lawyers as well. What I have found over the years is that we differ with the good lawyers that the Farm Bureau Federation employs on issues from time to time. We don't encounter the Farm Bureau Federation that frequently in the cases in which we participate. They typically serve more of a function of being a lobbying organization than a litigating organization, although more recently they have become involved in litigation. But we have found ourselves on the opposite side of the Farm Bureau in litigation recently involving one of the elements that is involved in this case, which is the environmental water account. It's a key part of the plan that's been developed by CalFed, which is, as you may know, the joint powers authority that includes federal and state representation for the purpose of attempting to better manage the state and federal projects. We found ourselves at odds with the Farm Bureau Federation on issues such as the environmental water account. Once this case was transferred to Judge Wanger, Judge Wanger concluded that the involvement with the environmental water account, in fact, was a factor which authorized intervention by another party in the case. Could you get back to Judge Trott's question? Wouldn't they both be defending the biological opinion? We suspect that they might be taking different views about the biological opinion than we do. For instance, one of the props of the case they would certainly be defending the biological opinion. Yes, of course. I mean, they're intervening as a defendant in the case on the side of the government. One of the teachings of the Arikake case is difference in litigation strategy doesn't normally justify intervention. But the Arikake case also indicated, Your Honor, that in that circumstance, there was a an agreement, in effect, that the party that had intervened was going to consult with and would be raising the arguments that were sought to be raised by the applicant for intervention whose intervention was denied. We do not have that in this case. Even though you're not an intervener, can you file an amicus brief in the district court? We could file an amicus brief if the Court allowed us to file the brief. But as the Forest Conservation Council case holds, amicus participation is not necessarily the same thing as participation as a party. I think what Your Honor is driving at is that this kind of a case, why wouldn't it? Pardon me? In an ordinary case, a slip-and-fall case, an amicus brief would not add anything. But in this kind of a case, dealing with law, amicus brief is just as important and just as vital and just as assertive as if you were a party. Well, Your Honor, I think that there's certainly no guarantee that we could file an amicus brief in this case. That's a discretionary determination by the district court. Well, he hasn't denied it. He has not decided that issue. But I think the larger question that Your Honor is raising is really one of judicial economy, which seemed to be the factor that was troubling Judge Wilken when she was we had several parties seeking to intervene as defendants in this case. Judge Wanger has dealt with that issue, I thought, rather effectively by saying we're going to have coordination on the briefing, we're going to have consolidation of briefing, we're going to have coordination of oral argument. And we're happy to live by those same rules. Of course, we think that's an appropriate way for this kind of case to be presented. But the even larger issue, I think, that's involved here is that the folks that we represent are the vast majority of those people who do hold contracts with the State of California for a State water project supply. Through the entities that we represent, all of whom are public agencies formed under the laws of the State of California, something like 23 million people get their water from the Delta throughout California. When people take on these big projects, these critical projects that are just essential for the well-being of the people of the State, there's an expectation, I think, that people are going to be trying to get into these cases to protect their interests. That's what's happened here. There are ways of dealing with the judicial economy issue that arises when you have so many people that are attempting to intervene. I don't think the numbers are that exceptional here. We've got essentially three interested parties plus the State of California who have moved to intervene, and all of them have been granted intervention except us. But the folks that we represent are substantial players in the operation of the State project, the Federal project. They are involved at all levels in the planning and in the implementation of the various measures that are intended to provide for the operation of these projects and also to serve for the efforts to protect the Delta environment. What is the argument that your parties would make that the existing parties would not make? We haven't seen the existing parties' arguments, Your Honor. But I can tell you that the State contractors are not bound, for example, by the same limitations that the State of California may be bound by in terms of the arguments that they can raise. We also have, because we represent in addition to the farming interests that receive water from the State water project, the vast number of municipal and industrial and commercial interests that receive that water, we have interests in water quality and the timing of water deliveries that others may not have. And what at one of the Have you filed something that says what all of your arguments would be so that they can declare whether they would make the same ones? Not at this point, we have not, no. I mean, what we have filed, Your Honor, are the intervention pleadings, which included our answer in intervention that set forth our arguments. But I can tell you that the arguments, because of the nature of the people that we represent, who receive water for multiple purposes, not just agricultural purposes, that the arguments that we may be making with regard to the timing of deliveries and the water quality issues that arise with regard to the quality of the water which is exported from the Delta may be different from those that are raised by the Farm Bureau. Now, everything you say is conditional, may be different. We haven't seen their arguments. It seems like an awful lot of time has passed, and time passed between the time of the filing of the complaint and the motion to intervene, where you might have been able to sharpen that up a little bit and just, instead of just saying maybe, maybe, maybe. Well, but maybe is the test, Your Honor. You could have talked to the other side, for example, and said, are you going to make these arguments? And they would have said no. And then you could have come in and said, well, look, we tried to make sure that these arguments would be made, and they said we're not making them. What, did anything prevent you from doing that? In the sense that we have not yet received the administrative record, yes. We have not had the opportunity to go through the record to determine what's there and what isn't. And we're obviously going to- In the sense that you have not yet gotten the, have you talked to them at all? No, we have not. What explains that? We simply have not had- The reason you haven't talked to them is so you can make the decision. I don't know why. No, Your Honor, that's not the reason why. We have had experiences with all of these entities previously, including the Farm Bureau Federation. And we do find ourselves on different sides. They're hostile to your side of the- Sometimes they are, yes. Sometimes they are. In fact, as I mentioned, the environmental water account case- Sometimes they are. That's not decisive between lawyers. I mean, most three-party cases are shifting conspiracies of two against one. It's just what you do. Depends on the issues in the case, I think. And when it comes to the Delta, those shifting alliances are there all the time. So somebody that's on your side today may not be on your side tomorrow. And I'm sorry that I'm using the word maybe. That's the phraseology that the decisions of this Court have used. Well, you see, we're trying to get something concrete. I understand that. What is it that you would do that the parties in the case wouldn't do? We can't get it. We're bringing to the case a perspective that is different from the people who were trying to represent our interests by Judge Wilkin. We are not simply farm interests. We are municipal interests as well. The difference there- And what arguments you'd make. You haven't talked to the other — to the parties that are in to see if they'd make the same ones, nor looked at the administrative record to determine what your arguments would be. It seems kind of lacking in concreteness. We have, Your Honor, an idea of what our arguments are going to be. What I can't tell you is what the arguments that the other side is going to make, what those arguments will be. And we simply have not had the opportunity to coordinate with them. And since we're not involved in the litigation at this point, no real reason to do that. Our concern was simply that Judge Wilkin, without taking oral argument, without asking the kinds of questions that you're asking, made a determination. Okay. That the Farm Bureau represents our interests. We don't believe they do. We're reviewing De Novo, so we're giving you a chance today. Tell us what you would do that they wouldn't do. We support the environmental water account. We support the South Delta Improvement Program. The South Delta Improvement Program, which we've described in our briefs, is one of the things that's been put at issue in this case by the plaintiffs. The South Delta Improvement Program involves two primary functions or elements. One is to increase the pumping capacity at the state pumping plant from the existing 6,600 cubic feet per second to 8,500 cubic feet per second, to give the state project additional flexibility in meeting the demands, particularly of urban users who have year-round demands for water. The second part of that, or second element of that program, is a barrier program, including the head of Old River Barrier, barriers at Grant Line Canal and also Grant Bridge, which are intended to protect water quality within the delta. And the state contractors are the principal funding entity that will make those projects happen. We pay for the state project, Farm Bureau doesn't. So we're interested in actions that affect programs that we are going to pay for, that we've been responsible for developing. Farm Bureau hasn't been involved in those programs like we have. They may have an interest in it, they haven't been part of the planning process which has created those programs. Are they opposed to the South Delta Improvement Program? I don't know whether they are opposed to that program or not. They have interests in the delta that are farming interests that are also members of the Farm Bureau, people that are opposed to the South Delta Improvement Program. So they've got, in a sense, a split constituency there. Let me try something else on you. Is there anything that would prevent you from renewing your motion to intervene at a time when you see what the other side is doing and you come in with a kind of like a holy cow. Now, look, this demonstrates that we're not adequate, that we have a different interest, that we have a different objective. Is there something that would prevent you from renewing your motion to intervene once there's something on the table that's concrete instead of maybe? Well, certainly the timing of the case in the court below, Judge Wanger has decided to move this case rather quickly, so there's now a briefing schedule in place on the merits. But is there any legal rule or principle that says once you've made a motion to intervene and it fails, you shall never be heard to make another one? Well, I'd be concerned about the argument of law of the case. And if this Court's going to render an opinion that says we can do that, we would certainly try to use that opportunity. I don't want to face a circumstance where we've been denied once, we come in and try again, and we're faced with an argument that the law of the case says we can't intervene. That would be my concern. So I guess what I'm saying — Ask us to drop a footnote. I'm asking you to rule in my favor is what I'm asking. Yes, to me. I mean, it sounds like if we did drop a footnote, it would take care of the problem. It — I'm not — I'm not sure that it would. Here's — part of the problem is that this case is going to set a precedent. We intervene in a lot of these cases because of our interest in the State Water Project and more generally in the relationship between the State project and the Central Valley project. If we get an opinion that says we're just out of luck because, gosh, the Farm Bureau or the San Luis and Delta Medota people or the State of California are already in the case and we can't get in, we're stuck, and that's really harmful to us because people frequently do not name us, and frequently we do have to intervene in these cases. And the courts have generally found our participation to be helpful. What's your batting average on trying to intervene where you haven't been named? It's been very good. It's been very good. Sometimes we get it by stipulation when we have to fight our way in. We've had a pretty good batting average. That's what was so disturbing about this case is that the Court is finding — remember the context when we sought to intervene in this case. There was nobody in this case representing the State of California and the State Water Project. Now, three of you walked up at the same time. And three of us walked up at the same time. The Court opens the gate for two of them and turns around and slams the gate on us and says, gee, now I've let these folks in. They represent your interests. Now, there is an — you don't want an unwieldy procedure. And if somebody is — Of course you don't. — riding along on the same horse, you say, hey, one person on one horse. We tried to point out to Judge Wilkin that it wasn't the same horse, it wasn't the fact that we do have legal interests in the State Water Project. We hold the contracts for State Water Project supplies. The Farm Bureau does not. Their members do not. So if there's a legal interest involved here, we're the ones who have that legal interest, not the Farm Bureau. And there may be fine folks represented by fine counsel. They are not in these cases on this — on the same basis that we are, because we have that legal interest and they don't. You're relying upon the interests of your members, not your interests. The organizational — if you're asking about organizational intervention, I believe we meet the test for that as well. Yes, we're relying on the interests of our members. We have 27 of the 29 folks who hold State Water Project contracts. The only two we don't have — But you don't. I don't. The State Water Contractors Organization does not. The members of the organization do. And you stand in their shoes. We do. What do you own? I'm sorry? What do you own? We are a — You don't own any water rights. We are the entity that represents those interests. We are the — we're a public benefit corporation. Like, for example, the RDC doesn't own anything either, but they represent people who have interests. And we are in the same position. We represent people who own contracts for State Project supplies. Why can't they intervene? One of them is now attempting to do that as a result of the denial of intervention in our case. I'm sorry? Isn't that sufficient? They've got a legal, definite interest to protect, and you don't. Well, I think we do. But if you're interested in judicial economy, having 27 interventions — I'm not saying that. Well, that's, I think, what the result would be. I'm not interested, but you may have to — you may have to have a case where there's 100 parties. Well, it's possible. But, Your Honor, I don't believe that — that anyone has argued that the contractor's organization is — is not an appropriate intervener here because they do not possess themselves the State Water contracts. They certainly do represent those who do have those contracts. The alternative, I think, is what you're beginning to see in this case, which is that individual contractors are now — Not even their agents. I'm sorry? You're not even the agents of your members. We are the agents of our members. What is the — where do you have that right? It's in our bylaws. We can — we can sue and be sued on their behalf according to our bylaws. They've each agreed that we have that power. Okay. If the Court has any other questions, I'd be happy to try and answer them. I think you've covered most of what I had in here. Thank you, counsel. Thank you. Counsel? Good morning. May it please the Court? I'm Andrea Treese. I represent Natural Resources Defense Counsel and others. Please keep your voice up. I'm sorry. Thank you. I think Your Honors have already addressed the crux of the issue here, which is that this case really centers on the validity and the integrity of the State Water contract. The validity of the biological opinion, and that will be decided according to the standards of the Endangered Species Act and the Administrative Procedures Act, not according to who's getting water from where or how they use it. NRDC would obviously like to have as many parties on the other side excluded as possible, and the more capable they are of being effective, the more important it is to exclude them. So NRDC's pitch is not really the most persuasive. What has been the position of the parties that are in the case toward the prospective intervener? Their position seems to be, if not encouragement of their intervention, at least indifference. So they didn't object? They're not opposing? No, not at all. And the judge in the trial court has indicated there's going to be coordination so that the thing does not get out of control. Is that right? He has indicated that there will be some coordination. He hasn't set any specific page limits or specific method for that. What's the harm of letting them intervene? Well, I think that given that the parties are going to be arguing over the same issues in the biological opinion, and just taking a step back, the plaintiffs have made some very fundamental claims about the biological opinion. Their claims don't address one project or the other, rather they're addressing flaws such as the failure to use best available science, in that the biological opinion doesn't use the most current data on the Delta population. My question is what's the harm of having them in the case? The harm is that they don't offer any new element. They don't offer any new argument that won't already be made by other parties. I would think that that would be good for NRDC, because the more parties that get in, the more parties are definitely barred by res judicata if you win. Well, I think the concern here is really judicial efficiency. It's whether But the district courts can take care of that. They do that all the time. They tell the lawyers, okay, pick one lawyer to argue this point. You know, I mean, we've all been there. They don't just say free for all the way it happened in the O.J. Simpson case. You know, the federal district courts control these things quite well. The district court certainly has the ability to control that. At this point, the court has not done, you know, set the sort of limits like page limits or required very strict coordination. Yeah, but what the district court has done is it's spawned now 27 other people want to get in as individuals. So talk about efficiency. Now you're going to have, I don't know, maybe 27 motions to intervene. Well, fortunately, the deadline for intervention has passed, and we pretty much have our universe of For this perspective, Intervenor, it sounds as though their bylaws do give them a legally protectable interest, and they do have at least some practical interests that are distinct from the Farm Bureau. It's very hard to predict these environmental cases because often you have negotiation and settlement, and it's hard to predict how the various interests are going to be affected. Why shouldn't it be enough that they do represent distinct interests that in some respects differ? Well, I think the question is really whether those distinct interests have any relevance to what arguments are going to be available to them. We don't know. Nobody can know at this stage. There's always potential for a settlement. Is that right? There's some potential for a settlement. It seems, frankly, unlikely. Well, unlikely, but generally speaking, if you have a settlement, don't you want to have everybody at the table who has a legal interest that's affected? I don't think that with respect to the issues that this case presents, that those interests really are relevant to the resolution of the claims. Well, here's what I'm thinking about. I don't know if I understand what the case is really about because all this water stuff is kind of esoteric if you're not from California. But I think what it's about is at some point in the case, everybody's going to sit around a table and negotiate who gets how much water under what circumstances and what provisions they make for the various environmental protections. Isn't that what's going to happen? No. No, Your Honor. The case is about whether the biological opinion was, you know, whether the service adequately analyzed the impacts of the water. It's about the adequacy of the biological opinion. But nobody cares about that just as a theoretical matter. We're not evaluating somebody's Ph.D. thesis to see whether it's — it deserves to get the doctorate. People only care about the biological opinion insofar as it bears on what's going to happen with the water. Right. But the question of who's going to get water and how much they're going to get simply isn't before the Court. Well, what's your objective? What's your ultimate objective? Our ultimate objective is that the Court order the biological opinion to be remanded to the agency for reconsideration as a whole. Because you think there's something defective. Yes. And is that just because you have strong feelings about biology, the environment can go hang, but you have intense concerns about biology and you want better opinions?  It's about whether the Fish and Wildlife Service took a real hard look at the amount of water that's coming out of the delta and what impact that has on the species. You want more water coming out of the delta for the species? We want more water left in the delta for the species. More water left in the delta. See, so this affects everybody who has interest in water. Certainly. Farmers want the water on the fields. You want the water left in the streams. Is that it? Yes. You think the biological opinion is defective because it allows the farmers to have too much water for the fields? No, the biological opinion is defective because they fail to consider very fundamental issues such as whether. You keep wanting to divert me so that we just talk about it like it's a Ph.D. thesis being submitted for approval. Why do you care about the biological opinion? What is the ultimate concern that the biological opinion bears on? The ultimate concern is whether this no-jeopardy opinion is valid, whether by remand. What would the practical consequence be if you succeed? If we succeed, the practical consequence is that the Fish and Wildlife Service will have to take another look at whether there's an impact. You persuade them that you're right about the biology. Right. Your scientists are better than their scientists have been. They look it over and they say, oh, we made a mistake. NRDC scientists are right. And they come up with a new opinion. What effect does that have on the water? Well, what effect it could have is leaving some more water in the delta. So it could have an adverse effect on the clients of the organization that's before us. It could. But what that effect would be is If your scientists are right, the farmers get less water? That's a possibility. And there's no harm in letting them in. But it seems that it's the essence of due process. If something is about to happen to you that's significant, that you be accorded a place at the table. But I think the point is, and I'm not trying to avoid your point, but the court in remanding the biological opinion is not going to be deciding whether there's any different allocation of water than currently exists. Counsel, we understand that. Do you understand our questions? I believe so. Your point is that their interest will be affected. I'm thinking the biological opinion is a step in a process. It's the first domino. And you hope that sooner or later one will fall over where you really want it to fall over. Certainly. I mean, the effect of remand certainly could reduce water supplies. Could fall over on the organization's members. It could affect their members. That is true. It's in the same way that it could affect Westland's members and the Farm Bureau's members. And it certainly affects the interest of the state. If the membership is not identical and the Farm Bureau in some respects has different preferences, why shouldn't the prospective interveners be allowed to be heard? Well, I also would just to point out that Judge Wilkins' decision was not just that the Farm Bureau represented the state water contractor's interest, but also that cumulatively along with Westland's, both of them represented their interests. And together, they represent agricultural and municipal users, public water agencies. They represent the full spectrum of interests that the state water contractors hold. Here's a problem that I have. I'm thinking of this, well, as though I were still a district judge, I guess. On the one hand, you have a strong motivation if you're a district judge to make the case manageable. The more parties who get in there, the more difficult it is to try to get the case from the beginning to the end and to understand it all and be coherent. On the other hand, when an environmental advocacy group brings a lawsuit, often it has huge consequences for a vast range of interests. And it can't be simple and still be fair to all those interests. That's the dilemma. And I'm just wondering whether there really is a difference in the interests here of the parties that are in the case and the parties that aren't allowed to be in. And the more concrete you can get, the more helpful you'll be. Okay, well, I think with respect to looking at their interests, for one thing, under Rule 24, it's important to look at their interests in this litigation, not just in general. And their interest in this litigation is the same as that of the group. I'm not willing to confine it that narrowly because environmental litigation often results in some sort of negotiated settlement. And it's almost always a rock in the middle of a pond with tremendous ripples that go out. Counsel, I don't think that Judge Wilkins rolled over in favor of environmentalists. No, I agree with you, Judge. I don't believe that she did either. Wasn't every argument made against you here this morning considered by Judge Wilkins thoroughly, deliberately, conscientiously? Yes, I believe that the interveners should not be allowed to intervene. Yes, Your Honor. And I believe that she engaged in that balancing of the interest that the parties represent, which no one is disputing that they hold an interest, but the balancing the protection of that interest with judicial economy and what the addition of that party actually adds, which really isn't anything in this case. It's true, but it's not an abusive discretion standard of review. It's a de novo standard of review. So we do it de novo. Certainly. No, I don't disagree with that. I think the, you know, what the State water contractors have really set forth are individual interests that they hold that don't necessarily give them any new arguments with respect to the validity of the biological opinion, which is the only issue before the Court. And they haven't identified a single argument that the existing parties in the case cannot or will not make. They, indeed, the existing parties also cumulatively represent the State water contractors perspective in this case as a public water agency delivering water to agricultural and municipal users. So it's difficult to see what they really add, either in protecting their own interests or to the Court's understanding of the case. And that's particularly the case when we also now have the Department of Water Resources present in this case, which operates the State water project, certainly has a great deal of expertise in the project, and has a very keen interest in maintaining and expanding those water supplies to the users it delivers the water to, including the State water contractors. It seems like what the State water contractors are really left with is a claim that they will defend certain aspects of the biological opinion more vigorously. I'm thinking the biological opinion. I haven't actually read the biological opinion, so you educate me on it. But if I think about other biological opinions that I've read from time to time, it probably has a whole lot of subsections, and it talks about the effect of the proposed measure on fish, and it subdivides it into salmon and into other kinds of fish. What do they call them? Anadromous and non-anadromous fish. And it talks about the effect on salinity of the soil, and all kinds of other things, and the effects where the stream meets the ocean. Usually they have a lot of subsections. And I'm thinking you may be interested in some sections, other parties may be interested in other sections, and still other parties may be interested in other subsections. Actually, this biological opinion only pertains to delta smelts. It's the only species at issue in that opinion. And the biological opinion looks at the future joint operations of the Central Valley Project and State Water Project as a set of interdependent related operations, and determines or attempts to determine whether that set of operations will adversely impact the delta smelt. The 2004 operations criteria and plan that the biological opinion analyzes actually aims to integrate the operations of the State Water Project and the Central Valley Project even more than they are now. So while there are certainly subsections to the biological opinion, it represents a set of very integrated interdependent operations that are extracting water from the very same water source, the delta. So I think it would be a difficult opinion to parse apart in terms of different projects, just because they're pretty closely linked with one another, I think, if that answers your question. And along those lines, because these projects are closely linked and the biological opinion analyzes them as closely linked projects, not only do the existing parties have available to them all the same arguments that the state water contractors do, but they also have every motivation to make those arguments with respect to the whole biological opinion, because they need to do so in order to defend their own particular interests and their water supplies. Now, I think for the reasons that we've discussed and that you recognized in earlier questioning, we believe that the state water contractors are certainly adequately represented by existing parties. I think that said, if the court is at all inclined to reverse the district court's denial of intervention, we would suggest that it follow a suggestion even made by the state water contractors, that rather than simply admitting the state water contractors, that it remain to the district court to allow the district court to take into consideration all existing parties when it's looking at the application, particularly in light of the Department of Water Resources' recent intervention and the separate move to intervene by their member agency, the Kern County Water Agency. Of course, we don't believe that remand is necessary, because Judge Wilkins' decision was well-founded in finding that these interests are cumulatively represented and achieving their ultimate objective of upholding the biological opinion and allowing them to enter the case simply in order to make the same arguments regarding the same issues really wouldn't add anything to the court's understanding of the case or even to the protection of the contractor's interest in the case. What it would add is burden to the court and to plaintiffs in having to review and respond to repetitive arguments on the same issues. If the Court has any other questions, I'd be happy to answer them. Thank you, counsel. Thank you. I just have three quick points. First, Judge Kleinfeld, you're right. The biological opinion in this case is divided into subsections. It's a bit unusual in that the subsections are not so much species-oriented as they are operational orientations. So you'll have descriptions of not just the Federal CVP or the State Water Project, but the various operational elements of the projects. One of those descriptions is the environmentalists are wrong. Are you saying that the environmentalists are wrong? No, Your Honor. I'm saying that the opinion is divided into sections, but the sections are a bit different than the ordinary biological opinion. One of the sections that is discussed in the biological opinion is the South Delta Improvement Program, which involves an increased capacity for pumping from the Delta. In the complaint that was filed in this case, the plaintiffs say, among other things, and this is what they're complaining about, the proposed changes to the CVP-SWP operations described in the OCAP and biological opinions project description would significantly increase water exports from the Delta. There will be an increase in water exports from the Delta. That's why we're interested in this case, because we are in favor of that. It's a project we have endorsed and are on the hook for paying for. So are the other defendants. Well, I'm not so sure that the other defendants have been involved in this. Well, if you're not so sure, then why don't you make sure before you make a motion here? Well, I am sure that Judge Wilkin was wrong when she said in her order denying intervention to us in this case that the Farm Bureau has contractual rights to both CVP and SWP water. Wrong. The Farm Bureau doesn't have contractual rights to any water. The people that hold the contractual rights to water. Well, we know she's wrong and you're right. Well, there's no support for her determination in the record. There's no support for yours either. Oh, yes, there is. We've got declarations that were filed in support of our motion to intervene, sir, that indicate that we do have contracts for water. There are no comparable declarations that were filed for the Farm Bureau. Some of their people do have contracts, not with the State of California and not for SWP water. They have contracts with local water suppliers. They don't have contracts for State project water. And Judge Trott — I'm sorry. Neither do you. I'm sorry? Our members do. Neither do you. Our members do. Oh, okay. And the members that we are authorized to represent through the bylaws that we have do hold those contracts, 27 of them. Judge Trott, you're surmised that there is at least a settlement possibility is correct. We're engaged currently in settlement discussions in another matter with the NRDC plaintiffs involving the San Joaquin River. Our concern would be that this case not be settled around us by people who have different interests than we do. And there is certainly that possibility out there. Thank you. Thank you, counsel. Natural Resources Defense Counsel versus Norton is submitted. We're adjourned until 9 a.m. tomorrow. Thank you.
judges: Ferguson, Trott, Kleinfeld